Cheryl GUTERMUTH, Appellant,

v.

EXCEL; Walter Bedford, Arbitrator; W. Bruce Cowden, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2000–SC–0656–WC.

Supreme Court of Kentucky.

April 26, 2001.

Wayne C. Daub, Louisville, Counsel for Appellant.

Michael P. Neal, Sewell and Associates, Louisville, Counsel for Appellee Excel.

## OPINION OF THE COURT

KRS 342.165(2) prohibits workers' compensation benefits in certain instances where the injured worker has made a written misrepresentation about her physical condition or medical history when being hired. This claim was dismissed based upon findings that the claimant falsely represented her physical condition on a written questionnaire, that the employer substantially relied upon those misrepresentations when hiring her, and that her subsequent injury was causally related to those misrepresentations. The Workers' Compensation Board (Board) and the Court of Appeals have affirmed, but she asserts on appeal that the decision was erroneous as a matter of law.

In addition to a written application, math test, and interview with two management personnel, the employer's hiring procedure required the claimant to undergo a pre-employment physical examination, as a part of which she completed a written questionnaire concerning her medical history. In response to a question concerning any prior operations, she listed only a hysterectomy and vein strip. She denied having missed work due to a work-related injury, denied having ever received a full or partial disability, and denied being forced to give up a job for health reasons. Although she did admit to having had joint pains and wrist or hand problems, there is no indication that she revealed the full extent of the problems with her arms. Page two of the questionnaire contains a note in a different handwriting which indicates only that she had had carpal tunnel surgery on both wrists 1½ years before and that there was no obvious problem.

In fact, the claimant had developed work-related gradual injuries to her arms and had undergone six related surgical procedures: bilateral carpal tunnel releases, bilateral pronator teres releases, and bilateral thumb joint replacements. In December, 1995, Dr. Tsai had restricted the claimant from lifting more than 20 pounds or more than 10 pounds on a frequent basis. Among other things, he had also directed her to avoid repetitive use of her hands, overhead work, and ladders and unprotected heights. A claim for the injuries was settled for a 17.5% disability, and the claimant was later let go for excessive absenteeism.

Elsewhere on the questionnaire, the claimant denied having had recurring back, knee, or shoulder problems despite the fact that she had sustained a knee injury in the early 1980's for which a workers' compensation claim was filed and also had a longstanding history of problems with her cervical spine. A 1993 MRI had revealed degenerative disc . disease throughout much of the cervical spine, at least moderate spinal stenosis, and a herniated cervical disc for which a period of halter cervical traction was prescribed. In May, 1996, the claimant had complained of burning pain in her chest, upper back, shoulders, and neck and was told that it was due to osteoarthritis and cervical disc disease. On June 28, 1996, four days before the pre-employment physical, her physician had again diagnosed chronic musculoskeletal pain which was related to both the repetitive motion injuries and cervical degenerative disc disease.

The claimant was cleared by the examining physician to work without restrictions, was hired, and began working as a packer on July 8, 1996; later, she became an order picker. On September 4, 1997, she injured her neck when she drove a cherry picker over a break in the concrete floor while performing her duties. Her claim alleged that the incident caused her neck

to become painful and made surgery necessary.

When deposed, the claimant denied having had any significant problems with her neck before the incident at work but did admit to a burning sensation in the back of her head. She indicated that she did not remember discussing surgery for her neck in 1993, indicated that she did not remember being put on restrictions by Dr. Tsai following the arm surgeries, and admitted that she did not tell the doctor who performed the pre-employment physical about her prior neck condition or her restrictions. She testified that she continued to work for a while after the incident but that she began to experience a burning sensation down her arms and left work early that day in order to obtain medical treatment. She testified that her neck continued to be painful and that it was aggravated by lifting.

At the hearing, she testified that she had undergone a surgical fusion at C5–6, that she had not yet been released to return to work, and that she continued to suffer from burning pain when she lifted her arms. She admitted that she had failed to list the arm surgeries on the medical history questionnaire, explaining that she did not think that the surgeries were relevant and that she had informed the examining physician of the carpal tunnel surgery. When confronted with the fact that she had received disabilities of 15% and 17.5% for her prior workers' compensation claims and the fact that she had listed no serious injury on the questionnaire, she explained that she did not view the arm and knee injuries as being serious because she had later been able to return to work. She testified that she had had a slight amount of arthritis in her neck before the incident at work but had been told that it would not keep her from working.

The employer's general manager, Paul Beattie, testified that he was not aware of the claimant's prior arm surgeries or of her work restrictions. He indicated that her initial duties as a packer included checking orders that were picked to be certain they were accurate, packing them in shipping containers, and labeling the containers for shipping. Explaining that it was a physically demanding job, he testified:

There is bending, lifting. We have parts that weigh in excess of 70 pounds.... You're lifting orders off a pallet, putting it on a work table, checking the order, packing the order, taping the box closed, and then physically moving that box from a work station to a conveyor belt for processing. So, it is physically demanding, as far as the mechanics involved.

Later, as an order picker, the claimant's duties included riding a cherry picker in order to retrieve the necessary items, placing them on a pallet, and then delivering them to the packers for shipping. Beattie testified that had he known of the claimant's restrictions, he would not have hired her without a medical clearance to do the work. He also testified that he was never told of the herniated cervical disc, that he did not know that she had seen a physician for major complaints of neck pain after filing her application but before undergoing the physical exam, and that this information would have affected his decision to hire her.

After reviewing the evidence, the Administrative Law Judge (ALJ) determined that the claimant had knowingly and willfully made a false representation about her physical condition on the medical history questionnaire, that the employer had relied on the false representation, and that the employer's reliance was a substantial factor in the hiring. Noting that there was medical evidence dating from early

1993 to the effect that there was a correlation between the neck condition and upper arm complaints, the ALJ determined that there was a causal connection between the false representation and the injury for which compensation was being claimed. Based upon those findings, the ALJ concluded that KRS 342.165(2) required a denial of the claim, a decision with which the Board and the Court of Appeals have agreed.

KRS 342.165(2) was the legislative response to cases in which an injured worker had misrepresented his physical condition to the employer in the process of obtaining employment and later received an injury which was causally related to the misrepresentation. *See Honaker v. Duro Bag Manufacturing Co.*, Ky., 851 S.W.2d 481 (1993); *Divita v. Hopple Plastics*, Ky.App., 858 S.W.2d 214 (1993). As enacted effective April 4, 1994, KRS 342.165(2) provides:

> No compensation shall be payable for work-related injuries if the employee at the time of entering the employment of the employer by whom compensation would otherwise be payable falsely represents, in writing, his physical condition or medical history, if all of the following factors are present:
>
> (a) The employee has knowingly and willfully made a false representation as to his physical condition or medical history;
>
> (b) The employer has relied upon the false representation, and this reliance was a substantial factor in the hiring; and
>
> (c) There is a causal connection between the false representation and the injury for which compensation has been claimed.

The claimant asserts that the decision was erroneous as a matter of law and attacks each of the required findings of fact. In disputing the finding that she knowingly and willfully misrepresented her physical condition, the claimant asserts that she told the examining physician of her hand surgery and indicated on her employment application that she had undergone surgery. Despite her protestations, however, it is clear that when completing the questionnaire and undergoing the physical examination she failed to reveal the full extent of the injuries to her arms or to reveal the restrictions imposed by Dr. Tsai. Likewise, she failed to reveal the longstanding history of problems with her neck, back, and shoulders. Those failures are particularly significant because this claim concerns an injury to her neck with complaints of arm pain. The claimant's false representations concealed her true physical condition from the physician who examined her, led the physician to conclude that she could work without restrictions, and defeated the very purpose of the examination. Mr. Beattie made it clear that the claimant's work was physically demanding and that he would not have hired her had he known of her restrictions.

The claimant has argued that the clinical findings and opinions of the university evaluator must be given presumptive weight and that they required a finding that her neck condition was aggravated by the jolt she received in the incident at work. This argument misses the mark, however, because KRS 342.165(2)(c) prohibits compensation if there is a causal connection between the false representation and the injury for which compensation is claimed. The ALJ concluded that there was such a causal connection, and nothing in the university evaluator's testimony would tend to indicate that the finding was unreasonable. *See Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986).

It is clear that the ALJ made all of the findings required by KRS 342.165(2). Although the claimant has pointed to evi-

dence which might have permitted different findings of fact, she has failed to demonstrate that any of the findings which were made was so unreasonable that it must be viewed as erroneous as a matter of law. Likewise, the claimant has failed to demonstrate that the ALJ misapplied KRS 342.165(2) when deciding to dismiss the claim.

The decision of the Court of Appeals is affirmed.

All concur.